UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**FRANKIE PARKER**,                          Case No. 1:11 CV 1239

        Plaintiff,                     Magistrate Judge James R. Knepp II

    v.                                 MEMORANDUM OPINION AND ORDER

**COMMISSIONER OF SOCIAL SECURITY**,

        Defendant.

### INTRODUCTION

Plaintiff Frankie Parker seeks judicial review of Defendant Commissioner of Social Security's decision to deny supplemental security income (SSI). The Court has jurisdiction under 42 U.S.C. § 1383(c)(3). The parties have consented to the undersigned's exercise of jurisdiction in accordance with 28 U.S.C. § 636© and Civil Rule 73. (Doc. 14). For the reasons given below, the Court affirms the Commissioner's denial of benefits.

### BACKGROUND

Plaintiff filed an application for SSI alleging a disability onset date of August 1, 2004. (Tr. 100). Her claim was denied initially (Tr. 65) and on reconsideration (Tr. 71). Plaintiff then requested a hearing before an Administrative Law Judge (ALJ). (Tr. 9). Plaintiff was 54 at the time of her hearing, which was held December 2, 2009. (Tr. 27, 33). The ALJ found Plaintiff "not disabled." (Tr. 21). Plaintiff challenges the ALJ's decision to disregard Plaintiff's use of a cane in his residual functional capacity (RFC) and disability determinations and in fact specifically states the ALJ properly assessed Plaintiff's other non-exertional limitations. (Doc. 17, at 3). Therefore, the Court addresses only pertinent records regarding Plaintiff's ambulatory ability.

Plaintiff's Vocational and Medical History

Plaintiff graduated from high school and completed approximately one year of college. (Tr. 33). She has no past relevant work. (Tr. 44). She has a history of a stroke (Tr. 203), coronary artery disease corrected with angioplasty and stent (Tr. 36), hypertension (Tr. 219), and bipolar disorder (398–99).

Beginning January 18, 2006, Plaintiff sought treatment at Care Alliance Health Center. (Tr. 203). At her first visit, Plaintiff complained of weakness in her left arm, shortness of breath, and difficulties with balance and standing, reporting she had recently fallen in the street. (Tr. 203–05). Though Plaintiff had a stroke in 2004, she did not pursue physical therapy or rehabilitation at that time due to financial concerns and lack of health insurance. (Tr. 206). At a visit to Care Alliance on April 4, 2006, her right lower extremity strength was listed as 3/5. (Tr. 207). Throughout April 2006, Plaintiff continued to report right leg pain and weakness, frequent falling, and decreased functioning. (Tr. 207–08, 210, 214–15). While a neurological exam did reveal mild weakness in Plaintiff's right leg, her doctor's notes suggest this "may be [secon]dary to pain." (Tr. 210). Despite her reported pain and weakness, treatment notes indicate Plaintiff was still able to perform activities of daily living (Tr. 215), including caring for her young grandchildren (Tr. 210). Additionally, she was "able to rise from her chair [and] cross [the] room without assistance", though she did have a leaning gait. (Tr. 215).

In April 2006, Plaintiff expressed interest in physical therapy. (Tr. 214). After Plaintiff failed to show up for an appointment at Care Alliance on May 17, 2006 (Tr. 218), Plaintiff's treating physician Dr. Lisa C. Navracruz noted on May 24, 2006 that Plaintiff was walking with a cane she had borrowed from her mother. (Tr. 219). Dr. Navracruz reported the cane helped Plaintiff's

2

mobility, stating Plaintiff "walk[ed] well down [the] hall". (Tr. 219). At this appointment, Dr. Navracruz discussed with Plaintiff the importance of keeping scheduled appointments and the need for physical therapy. (Tr. 219). Plaintiff failed to show up for her next five appointments. (Tr. 221).

At Plaintiff's next appointment on July 21, 2006, Dr. Navracruz reported Plaintiff "walk[ed] easily under her own power" and again discussed the importance of following through with treatment. (Tr. 223). Plaintiff complained of 7/10 pain in both her arms and legs on September 8, 2006 and stated she was ready to start physical therapy. (Tr. 225). Dr. Navracruz noted Plaintiff was "finally connecting w/ cane" and referred Plaintiff to physical therapy. (Tr. 182).

At her first physical therapy session on September 19, 2006, the therapist noted Plaintiff had a slightly decreased range of motion in both her hips and her right knee, all of which were marked as 4/5. (Tr. 180). Plaintiff's listed symptoms were pain, weakness, poor balance, and limited ambulation. (Tr. 197). The physical therapist's assessment reported Plaintiff demonstrated limited balance, strength, and functional tolerance secondary to pain reports. (Tr. 180). At physical therapy on September 27, 2006, Plaintiff did some exercises and was issued and instructed in the use of a standard cane. (Tr. 181). At Plaintiff's October 13, 2006 physical therapy session, she failed to bring her cane, having left it in the car. (Tr. 181). Plaintiff failed to show up to her next three physical therapy appointments. (Tr. 198).

Plaintiff returned to Dr. Navracruz on November 3, 2006. While Dr. Navracruz noted Plaintiff reported having a cane, Plaintiff had not brought her cane to the appointment. (Tr. 228). Despite not having her cane, Plaintiff's gait was slow and steady. (Tr. 228). Later in November 2006, Plaintiff complained of hip pain radiating down her leg. (Tr. 231). Plaintiff also reported her physical therapist had asked her not to return to physical therapy until she could arrange care for her

3

grandchildren so she did not have to bring them with her to her sessions. (Tr. 231; *see* Tr. 198). Dr. Navracruz encouraged Plaintiff to keep her physical therapy appointments. (Tr. 231). At Plaintiff's March 14, 2007 visit to Dr. Navracruz, she reported she had not returned to physical therapy. (Tr. 232). Plaintiff reported "intermittent trouble walking". (Tr. 232). After using an accessory to rise from her chair, Plaintiff ambulated steadily under her own power. (Tr. 233). Physical evaluation on April 16, 2007 showed Plaintiff had full bilateral muscle strength in her legs, 2+ reflexes, and intact sensation. (Tr. 235). Plaintiff continued to complain of lower-extremity weakness into 2008. (Tr. 398).

After she applied for SSI on July 13, 2007 (Tr. 100), Dr. Franklin D. Krause performed a consultative examination of Plaintiff. (Tr. 261–85). Dr. Krause reported Plaintiff presented with a cane that was not obligatory, despite Plaintiff's slight limp favoring her right leg. (Tr. 261). Additionally, he found Plaintiff capable of self-care, as she reported being able to cook, clean, and shop at her own pace. (Tr. 261). According to Dr. Krause's findings, "[Plaintiff] carries on all activities of daily living at her own pace, including caring for herself and [her] grandchildren." (Tr. 262). Dr. Krause also reported normal findings on hip and lower-extremity examination. (Tr. 263).

After the ALJ's unfavorable opinion, Plaintiff submitted additional medical evidence to the Appeals Council (Tr. 690–96), which ultimately denied review (Tr. 1). This evidence included medical records from March through May 2010 documenting Plaintiff's treatment with orthopedic specialists. (Tr. 690–96). Ultimately, Plaintiff underwent knee surgery to correct a torn meniscus. (Tr. 691–92). Prior to her surgery, Dr. William J. Petersilge reported Plaintiff had been "relatively asymptomatic" until a couple months before her April 2010 visit with him. (Tr. 693). He noted Plaintiff had experienced "a little bit of discomfort prior to that time[,] but nowhere near as severe."

(Tr. 693). Ten days after her knee surgery, Dr. Petersilge reported Plaintiff was walking with a cane. (Tr. 690). She had full extension and "flexe[d] about 95." (Tr. 690). Plaintiff's rehabilitation after knee surgery included physical therapy in her home, and she was encouraged to increase her activities, "including walking and ankle flexion exercises". (Tr. 690).

*RFC Assessments*

On October 26, 2007, Dr. Leslie Green assessed Plaintiff's physical RFC. (Tr. 288–95). Dr. Green found Plaintiff can frequently lift or carry ten pounds and can occasionally lift or carry 20 pounds. (Tr. 289). With normal breaks, Plaintiff can sit, stand, or walk for a total of about six hours in an eight-hour workday. (Tr. 289). According to Dr. Green, Plaintiff is unlimited in her abilities to push and/or pull (Tr. 289), but can never climb ladders, ropes, or scaffolds. (Tr. 290). Additionally, Dr. Green found Plaintiff must avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation, and she must avoid all exposure to machinery and heights. (Tr. 292). Dr. Green found Plaintiff's allegations partially credible, but stated the severity of her alleged symptoms is not entirely consistent with objective evidence. (Tr. 293).

On March 21, 2008, state agency physician Dr. Gary Hinzman also reviewed Plaintiff's record to assess her physical RFC. (Tr. 549–56). Dr. Hinzman found Plaintiff can frequently lift or carry ten pounds and can occasionally lift or carry 20 pounds. (Tr. 550). She can sit, stand, or walk for six hours in an eight-hour day, with normal breaks. (Tr. 550). Additionally, Dr. Hinzman found Plaintiff unlimited in pushing or pulling, other than as shown by her lift or carry restrictions. (Tr. 550). He found Plaintiff could frequently climb ramps and stairs, stoop, kneel, crouch, or crawl, but could never climb ladders, ropes, or scaffolds. (Tr. 551). He found Plaintiff unlimited in her manipulative, visual, and communicative abilities (Tr. 552–53) and opined Plaintiff must avoid

concentrated exposure to extreme temperatures (Tr. 553). To explain his findings, Dr. Hinzman stated he found Plaintiff's statements only partially credible, as he found medical evidence did not support her reported severity. (Tr. 554). Specifically, Dr. Hinzman found that despite Plaintiff reportedly requiring a cane, objective findings did not indicate she needed such an aid. (Tr. 554). In response to Plaintiff's allegations that she falls frequently, Dr. Hinzman found "no evidence to suggest any significant joint dysfunction in the [lower extremities] nor balance disturbance that would cause this." (Tr. 554). While Plaintiff reports very weak legs, Dr. Hinzman pointed out objective strength findings have been essentially normal. (Tr. 554).

<u>Administrative Hearing and ALJ Decision</u>

A hearing was held before an ALJ on December 2, 2009. (Tr. 27–49). At the hearing, Plaintiff and a Vocational Expert (VE) both testified. (Tr. 27).

*Plaintiff's Testimony*

At the hearing, Plaintiff testified she had gone to physical therapy and been given a cane there. (Tr. 34). According to Plaintiff, the physical therapists gave her a cane because she was falling and having problems with her legs. (Tr. 34). As of the hearing date, Plaintiff testified she still uses the cane "mostly all the time". (Tr. 35). The only times she does not use it, she stated, are if she has rested up for several days, or if she is in her home and can hold onto sidewalls and tables. (Tr. 35). Discussing her ambulatory ability, Plaintiff explained she has weak legs. (Tr. 36). She testified she believed she could stand for about ten to fifteen minutes by herself, but would need her cane or something to hold onto to stand longer than that. (Tr. 39). With her cane, Plaintiff testified she could walk for about ten or fifteen minutes if she had also taken a lot of pain medication. (Tr. 40). On an average day, Plaintiff testified she gets up, bathes, takes her pain medication, and then sits down or

6

lies down. (Tr. 41). On a good day, she testified she goes out to pay bills or run errands. (Tr. 41).

*VE Testimony*

The ALJ asked the VE to consider a person of Plaintiff's age and education, who had no currently relevant vocational training, and who was also subject to the following limitations: the hypothetical worker could do a range of light work; could sit, stand, and walk for six hours in an eight-hour day; could lift, carry, push, and pull ten pounds frequently and 20 occasionally (with normal breaks); would be precluded from using ladders, ropes, or scaffolds; and would also be precluded from concentrated exposure to temperature extremes.[1] (Tr. 44–45).

Considering a person with those limitations, the VE testified there were jobs existing in significant numbers in the national and local economies. (Tr. 46–47). Specifically, the VE identified the positions of "cleaner, housekeeping" (light, unskilled, with approximately 8,000 positions available in Ohio and 250,000 available in the national economy); photo copying machine operator (light, unskilled, with approximately 2,000 positions available in Ohio and 35,000 in the national economy); and mail clerk (light, unskilled, with approximately 2,500 positions available in Ohio and 60,000 in the national economy. (Tr. 46–47).

The ALJ then modified the hypothetical to address a person with the same limitations as the first hypothetical, but who would be "additionally limited in that she must use a cane in her right hand whenever she is on her feet or . . . the equivalent . . . [such as leaning on something]." (Tr. 47). The VE testified this individual would be precluded from performing all light work, but testified there would be some sedentary positions available. (Tr. 47).

---

1. The hypothetical also included a number of limitations based on mental restrictions, but those are not at issue here. (Tr. 45).

7

*ALJ Decision*

In his decision, the ALJ found Plaintiff had not engaged in substantial gainful activity since the date of her application for SSI. (Tr. 15). He found Plaintiff has the following severe impairments: the residual effects of a remote cerebrovascular accident; coronary artery disease after angioplasty and stent; hypertension; and a bipolar disorder. (Tr. 15). He also noted a number of other non-severe impairments, but they are not at issue in this appeal. (Tr. 16). The ALJ then determined Plaintiff's severe impairments do not meet or medically equal a listing. (Tr. 16).

After considering all Plaintiff's symptoms and the record as a whole, the ALJ determined Plaintiff retains the RFC to perform a range of light work, subject to the following limitations: "[S]he can lift, carry, push and/or pull 20 pounds occasionally and 10 pounds frequently and can sit, stand and/or walk for 6 hours in an 8-hour work day with normal breaks. She can never use ladders, ropes, or scaffolds. She must avoid concentrated exposure to extreme temperatures."[2] (Tr. 17). The ALJ noted Plaintiff's reported weakness in her leg and frequent use of a cane and also mentioned Plaintiff said she cannot walk long distances without tiring and sometimes falls due to leg weakness. (Tr. 18). However, while he did find Plaintiff's impairments could reasonably be expected to cause her symptoms, he found her statements concerning the intensity, persistence, and limiting effects of those symptoms were not credible. (Tr. 18).

The ALJ did not include use of a cane as one of Plaintiff's limitations in his RFC determination because he found the record showed that "although she used a cane at times, it was not obligatory" and was not prescribed to her by a physician. (Tr. 21). More specifically, the ALJ

---

2. As in the hypothetical he posed to the VE (Tr. 45), the ALJ also included a number of limitations based on Plaintiff's mental RFC, but those do not factor into this appeal. (Tr. 17).

focused on Plaintiff's reported abilities. He noted Plaintiff lives with and cares for three young grandchildren. (Tr. 18). She makes sure they get to school and do their homework, does their laundry, and cooks their meals. (Tr. 18, 284). Though household tasks such as cleaning sometimes take her longer and she sometimes pays someone to help her clean, the ALJ found the record shows Plaintiff is able to do necessary housework. (Tr. 18, 284). She also goes to the store, does her own shopping, and uses public transportation. (Tr. 18, 284). The ALJ also referenced a number of physicians' and physical therapist notes indicating Plaintiff does not need a cane: "[Her physician noted Plaintiff] rose from her chair and crossed the room without assistance, although she did have a leaning gait" (Tr. 18, 215); "she presented with a cane she had borrowed from her mother" (Tr. 18, 219); "her strength was 5+ bilaterally, and her reflexes were 2+ bilaterally. . . . She had a cane, but was also able to ambulate steadily on her own" (Tr. 18, 228, 233, 235); "she did not always have her cane at her doctor's appointments" (Tr. 18, 181, 228, 233).

Relying on the VE's testimony responding to his first hypothetical, the ALJ found Plaintiff can perform jobs existing in significant numbers in the national economy – specifically "Cleaner, Housekeeping", "Photocopy Machine Operator", and "Mail Clerk". (Tr. 20–21). Applying Medical-Vocational Rule 202.13 as a framework for his decision-making, the ALJ found Plaintiff "not disabled". (Tr. 21). The Appeals Council denied review (Tr. 1), making the ALJ's decision the final decision of the Commissioner.

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the

record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the Court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for SSI is predicated on the existence of a disability. 42 U.S.C. § 1382(a)(1). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. § 416.920 – to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity,

age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The Court considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 416.920(b)–(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff alleges the ALJ erred two ways. First, she alleges the ALJ improperly excluded Plaintiff's use of a cane from the RFC determination. (Doc. 17, at 1). Additionally, she argues the ALJ failed to apply the appropriate Medical-Vocational Guideline. (Doc. 17, at 1).

ALJ's Exclusion of Plaintiff's Cane

Plaintiff argues the ALJ improperly excluded her "well-documented use of a prescribed cane" from her RFC determination. (Doc. 17, at 3). The VE testified a person with Plaintiff's limitations who was also required to use a cane would be limited to sedentary work. (Tr. 47). Because of this, Plaintiff alleges the ALJ should have included use of a cane in her RFC, limiting her to sedentary work, which – based on her lack of past relevant work – would have triggered a finding of "disabled" under Medical-Vocational Guideline Rule 201.12. (Doc. 17, at 14). Because substantial evidence supports the ALJ excluding Plaintiff's use of a cane from her RFC and his finding she can perform a range of light work, he was not required to determine if she could perform

11

sedentary work and was not required to find her disabled under Rule 201.12.

Although Plaintiff contends the ALJ erred by failing to include any limitations based on "[her] well-documented use of a prescribed cane" (Doc. 17, at 1, 3), treatment records indicate the cane was not prescribed by a treating physician (*see* Tr. 181) and show Plaintiff did not use her cane consistently (Tr. 181, 228, 233). The ALJ found "notations were made by examining physicians that, although she had a cane at times, it was not obligatory". (Tr. 21). This could refer to consulting-physician Dr. Krause's statement that Plaintiff was not required to use a cane (Tr. 261), but additional substantial evidence supports the ALJ's conclusion that Plaintiff's use of a cane was not obligatory.

Contrary to Plaintiff's assertion, her treating physicians did not prescribe her a cane. (*See* Doc. 17, at 10). The only evidence suggesting anyone ever told Plaintiff she should use a cane comes from a physical therapist, who issued Plaintiff a standard cane and instructed her in using it when Plaintiff started therapy, which she failed to even complete. (Tr. 101, 198). As to Plaintiff's other contention – that her use of a cane is "well-documented" – the record reflects otherwise.

In April 2006, Plaintiff was able to rise from a chair and cross the room without assistance and reported being able to perform all her daily living activities. (Tr. 215). At one visit, Plaintiff's treating physician Dr. Navracruz did note Plaintiff was using a cane she had borrowed from her mother, indicating this seemed to help Plaintiff's mobility, but she did not prescribe a cane for Plaintiff. (Tr. 219). Despite physical therapy issuing her a cane, Plaintiff failed to bring the cane to her next physical therapy appointment, reporting she had left it in the car. (Tr. 181). Plaintiff also presented without a cane to her next appointment with Dr. Navracruz, who noted Plaintiff's gait was slow and steady. (Tr. 228). Several months later, Plaintiff ambulated steadily under her own power

after using an accessory to rise from her chair. (Tr. 233). Further, physical evaluation showed Plaintiff had full bilateral muscle strength in her legs in April 2007. (Tr. 233). Although Plaintiff testified she uses her cane almost all the time (Tr. 35), the evidence shows she used it inconsistently at best. Further, the record indicates she is able to accomplish her activities of daily living, including caring for her young grandchildren. (Tr. 215, 261–62, 284). The record thus contains substantial evidence supporting consulting-physician Dr. Krause's conclusion that Plaintiff's use of a cane is "not obligatory" (Tr. 261), and supports the ALJ's decision to exclude the use of a cane from Plaintiff's RFC assessment (Tr. 21).

Plaintiff's Brief on the Merits cites evidence she submitted to the Appeals Council regarding treatment after the hearing date. (Tr. 5–6). Ultimately, Plaintiff underwent knee surgery (Tr. 691–92) and notes state Plaintiff was walking with a cane and moving slowly several days after her surgery. (Tr. 690). A court reviews an ALJ's decision, though, not the Appeals Council's denial of review. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Even though the Appeals Council incorporated the new evidence into the record (Tr. 5), the Court "may not reverse an administrative law judge's decision on the basis of evidence first submitted to the Appeals Council". *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). While a claimant may, pursuant to 20 C.F.R. § 404.970(b), submit new and material evidence to the Appeals Council for its consideration, once the Appeals Council denies review, the ALJ's opinion becomes the final decision of the Commissioner. *Casey*, 987 F.2d at 1233.

Plaintiff's 2010 treatment records were not before the ALJ when he made his decision, and even if they had been, the notes Plaintiff's orthopedic surgeon made prior to her surgery indicate she had only a "little bit of discomfort" and had been "relatively asymptomatic" prior to damaging her

13

meniscus in March 2010. (Tr. 693). This evidence – showing Plaintiff's legs had caused her few problems prior to March 2010 – also supports the ALJ's decision not to include cane use as a limitation in Plaintiff's RFC.

A court may only order the Commissioner to consider additional evidence when a plaintiff shows there is new material evidence and good cause for failure to incorporate this evidence into the record in a prior proceeding. 42 U.S.C. § 405(g). Here, Plaintiff's new evidence is not material because it shows she was relatively asymptomatic prior to tearing her meniscus and because the surgeon's treatment notes encouraging her to increase her activities and walking suggest Plaintiff's mobility was expected to improve following surgery. (Tr. 690, 693). Furthermore, Plaintiff has not even argued this new evidence requires remand or cited the relevant statute allowing remand for new evidence in limited circumstances. *See Casey*, 987 F.2d at 1233. Because even if the Court were required to consider this evidence, substantial evidence supports the ALJ's decision, the ALJ did not err by excluding Plaintiff's use of a cane from her RFC. *See id.* ("[E]ven if we were to consider the additional evidence as part of the record in determining whether the ALJ's decision was supported by substantial evidence, our conclusion would not change.").

Also related to cane use, Plaintiff argues the ALJ erred by relying on VE testimony when the ALJ's hypothetical did not account for use of a cane. (Doc. 17, at 11–12). Plaintiff states "Counsel for Plaintiff posed a hypothetical . . . based on Plaintiff's cane use" (Doc. 17, at 12), but in fact it was the ALJ who modified his hypothetical to inquire about cane use. (Tr. 47). Based on his review of the evidence, the ALJ concluded Plaintiff is not required to use a cane. (Tr. 21). The ALJ therefore did not err by relying on the VE's testimony regarding jobs available for a person with the limitations he found Plaintiff does have.

Application of the Medical-Vocational Guidelines

Related to the issue of cane use, Plaintiff states if the ALJ had found she was required to use a cane, the VE testified she would be limited to sedentary work. (Doc. 17, at 11). Given Plaintiff's other limitations, she argues Rule 201.12 of the Medical-Vocational Guidelines would have mandated a finding of disabled if she was limited to sedentary work. (Doc. 17, at 11). Because the ALJ properly excluded the use of a cane from Plaintiff's RFC, her argument about Rule 201.12 lacks merit.

Plaintiff also argues the ALJ erred in applying Medical-Vocational Guideline Rule 202.13, which applies to individuals closely approaching advanced age – ages 50 to 54. (Doc. 17, at 15–16). Instead, Plaintiff contends the ALJ should have considered whether it was appropriate to apply Rule 202.04 – covering advanced-age individuals age 55 and older – because Plaintiff was 54 at the decision date and was less than eight months from changing age categories. (Doc. 17, at 15). Had the ALJ considered whether it was appropriate to apply Rule 202.04 instead of Rule 202.13, and had he applied that rule in Plaintiff's case, Plaintiff argues the ALJ would have found her disabled. (Doc. 17, at 15).

Plaintiff relies on 20 C.F.R. § 404.1563(b), which states:

> We will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.

*Id.* After conducting the hearing on December 2, 2009 (Tr. 27), the ALJ issued his decision on February 25, 2010 (Tr. 21). Plaintiff's birth date is October 22, 1955. (Tr. 33). She was 54 at the time of the hearing and at the time the ALJ issued his opinion, placing her in the "closely

15

approaching advanced age" category triggering application of Rule 202.13. At the time the ALJ issued his opinion, Plaintiff was almost exactly eight months away from her fifty-fifth birthday.

While Plaintiff, citing no case law, argues the ALJ should have considered whether to apply Rule 202.04, Sixth Circuit precedent holds otherwise. In *Ellison v. Comm'r of Soc. Sec.*, 101 F. App'x 994, 995–96 (6th Cir. 2004), the court held an ALJ was not required to place the plaintiff – who was less than four months from his fifty-fifth birthday – in an age category that did not include his actual age, even though ALJs have the discretion to do so in borderline cases. *Id.* Moreover, nothing in the language of 20 C.F.R. § 404.1563(b) requires an ALJ "to address a claimant's borderline age situation in his opinion or explain his thought process in arriving at a particular age-category determination." *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 399 (6th Cir. 2008). Additionally, the ALJ in Plaintiff's case did not "mechanically" apply Rule 202.13 because he found restrictions on Plaintiff's ability to perform certain requirements of light work. (Tr. 20). The ALJ used Rule 202.13 as a framework and also considered Plaintiff's age, education, work experience, RFC, and the VE's testimony when he determined jobs exist in the national economy for someone with her limitations. (Tr. 20–21).

Eight months from changing age categories does not present a borderline case, *see Ellison*, 101 F. App'x at 995–96; the ALJ did not mechanically apply Rule 202.13, but considered other factors as well (Tr. 20–21); and nothing in 20 C.F.R. § 404.1563(b) requires an ALJ to explain his thought process in reaching a particular age-category determination, *see Bowie*, 539 F.3d at 399. For those reasons, the ALJ did not err and the Court affirms his determination that as a 54 year old woman almost exactly eight months away from turning 55, Plaintiff was an individual closely approaching advanced age.

## CONCLUSION

Following review of the arguments presented, the record, and applicable law, the Court finds the ALJ's decision supported by substantial evidence. Therefore, the Court affirms the Commissioner's decision denying benefits.

IT IS SO ORDERED.

s/James R. Knepp, II<br>
United States Magistrate Judge